UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JIMMY ENGLISH et al.,

                Plaintiff(s),

    - against -

ECOLAB INC.,

               Defendant.

06 Civ. 5672 (PAC)

 

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO APPROVE COLLECTIVE ACTION NOTICE

JACKSON LEWIS LLP
58 South Service Road, Suite 410
Melville, New York  11747
(631) 247-0404
      - and -
59 Maiden Lane
New York, New York 10038
(212) 545-4000

ATTORNEYS FOR DEFENDANT
ECOLAB INC.

Attorneys of Record:
      James R. Williams, Esq.
      Jeffrey W. Brecher, Esq.
      Marc S. Wenger, Esq.
      Matthew A. Steinberg, Esq.

# TABLE OF AUTHORITIES

## FEDERAL CASES

Aguirre v. SBC Communications, Inc., 2006 U.S. Dist. LEXIS 22211 (S.D. Tex. Apr. 11, 2006) ..................................................................................................................... 3

Atl. Indep. Union v. Sunoco, Inc., 2004 U.S. Dist. LEXIS 11223 (E.D. Pa. June 16, 2004).. 10

Badgett v. Rent-Way, Inc., 350 F. Supp. 2d 642 (W.D. Pa. 2004) ......................................9, 11

Barfield v. N.Y. City Health and Hosps. Corp., 2005 U.S. Dist. LEXIS 28884 (S.D.N.Y. Nov. 17, 2005) ..............................................................................................................3, 4

Billings v. Rolling Frito-Lay Sales, 413 F. Supp. 2d 817 (S.D. Tex. 2006) ............................ 10

Bilyou v. Dutchess Beer Distributors, Inc., 2001 U.S. Dist. LEXIS 3342 (S.D.N.Y. Mar. 9, 2001) ..................................................................................................................... 10

Bilyou v. Dutchess Beer Distributors, Inc., 300 F.3d 217 (2d Cir. 2002) ...................... 7, 9, 10

Bosch v. Title Max, Inc., 2004 U.S. Dist. LEXIS 30162 (N.D. Ala. Aug. 25, 2004) .............. 5

Clausman v. Nortel Networks, Inc., 2003 U.S. Dist. LEXIS 11501 (S.D. Ind. May 1, 2003)..7

Dean v. Priceline.com, Inc., 2001 U.S. Dist. LEXIS 24988 (D. Conn. May 9, 2001) ............ 7

Diaz v. Elect. Boutique of Am., Inc., 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 17, 2005) ..................................................................................................................3, 6

Dreyer v. Altchem Envt. Servs., Inc., 2006 U.S. Dist. LEXIS 93846 (D.N.J. December 12, 2006) ................................................................................................................3, 5, 6

Elliot v. Dave Ernstes & Sons Trucking, 2006 U.S. Dist. LEXIS 72278 (S.D. Ind. October 3, 2006) ..................................................................................................................9, 11

Flores v. Osaka Health Spa, Inc., 2006 U.S. Dist. LEXIS 11378 (S.D.N.Y. Mar. 16, 2006) ..................................................................................................................2, 3, 4

Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941 (W.D. Ark. 2003) ........................... 3

Friedrich v. U.S. Computer Servs., 974 F.2d 409 (3rd Cir. 1992) ............................................ 7

Gieg v. DRR, Inc., 407 F.3d 1038 (9th Cir. 2005) ................................................................. 15

Guyton v. The Schwan Food Co., 2004 U.S. Dist. LEXIS 4174 (D. Minn. Mar. 16, 2004), aff'd, 2005 U.S. App. LEXIS 1883 (4th Cir. 2005) .......................................................... 10

Harris v. FFE Transp. Servs., Inc., 2006 U.S. Dist. LEXIS 51437 (N.D. Tex. May 15, 2006) ..................................................................................................................3, 6

Harrison v. McDonald's Corp., 411 F. Supp. 2d 862 (S.D. Ohio 2005) ................................3

Hofmann La Roche v. Sperling, 493 U.S. 165 (1989) ..........................................................2

Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265 (M.D. Ala. 2004) ........................................7

Horne v. U.S. Auto. Assoc., 279 F. Supp. 2d 1231 (M.D. Ala. 2003) ................................3

Johnson v. TGF Precision Haircutters, Inc., 2005 U.S. Dist. LEXIS 44259 (S.D. Tex.
    Aug. 17, 2005)...........................................................................................................17, 18

Landsberg v. Acton Enter., Inc., 2006 U.S. Dist. LEXIS 23439 (S.D. Ohio Mar. 22,
    2006)..........................................................................................................................3, 4

Levinson v. Primedia Inc., 2003 U.S. Dist. LEXIS 20010 (S.D.N.Y. Nov. 6, 2003) ...........3, 4

Levinson v. Spector Motor Servs., 330 U.S. 649 (1947).....................................................8

Libront v. Columbus McKinnon, 1984 U.S. Dist. LEXIS 21259 (W.D.N.Y. Dec. 13, 1984)...3

Madrid v. Minolta Bus. Solutions, Inc., 2002 U.S. Dist. LEXIS 18539 (S.D.N.Y. Oct. 1,
    2002)..........................................................................................................................3, 5

Marsh v. Butler Co. Sch. Sys., 242 F. Supp. 2d 1086 (M.D. Ala. 2003) ...........................3

Masson v. Ecolab, 2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. Aug. 18, 2005) ...................9, 10

Mike v. Safeco Ins. Co., 274 F. Supp. 2d 216 (D. Conn. 2003) .........................................7

Mooney v. Aramco Services Co., 54 F.3d 1207 (5th Cir. 1995)..........................................3

Peraro v. Chemlawn Servs. Corp., 692 F. Supp. 109 (D. Conn. 1988)...........................7, 8

Persin v. Career Builders, LLC, 2005 U.S. Dist. LEXIS 23095 (N.D. Ill. Sept. 21, 2005) ......3

Prizmic v. Armour, Inc., 2006 U.S. Dist. LEXIS 42627 (S.D.N.Y. June 12, 2006) ........2, 3, 5

Reich v. Homier Distributing Co., 362 F. Supp. 2d 1099 (N.D. Ind. Mar. 22, 2005) ...7, 12, 13

Reich v. Waldbaum, Inc., 833 F. Supp. 1037 (S.D.N.Y. 1993), rev'd on other grounds, 52
    F.3d 35 (2d Cir. 1995).....................................................................................................5

Richards v. Computer Sciences Corp., 2004 U.S. Dist. LEXIS 19638 (D. Conn. Sept. 28,
    2004).......................................................................................................................... ...3

Rodgers v. CVS Pharmacy, 2006 U.S. Dist. LEXIS 23272 (M.D. Fla. Mar. 22, 2006) .......3, 5

Ruiz v. Affinity Logistic Corp., 2006 U.S. Dist. LEXIS 82201 (S.D. Cal., Nov. 6, 2006).......9

*Scholtisek v. Eldre Corp.*, 229 F.R.D. 381 (W.D.N.Y. 2005) .................................................3, 6

*Schwind v. EW & Assoc., Inc.*, 371 F. Supp. 560 (S.D.N.Y. 2005) ...............................15, 18

*Sheffield v. Orius Corp.*, 2002 U.S. Dist. LEXIS 23781 (D. Or. Sept. 13, 2002) .........................3

*Shushan v. University of Colorado*, 132 F.R.D. 263 (D. Colo. 1990) ........................................2

*Sinclair v. Beacon Gasoline Co.*, 447 F. Supp. 5 (W.D. La. 1976) ............................................7

*Talton v. Caffey Distrib. Co.*, 2005 U.S. App. LEXIS 927 (4th Cir. Jan. 18, 2005) .....................9

*Torres v. Gristede's Operating Corp.*, 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. September 28, 2006) ..............................................................................................................................2, 3

*Tyler v. Payless Shoe Source, Inc.*, 2005 U.S. Dist. LEXIS 31682 (M.D. Ala. Nov. 22, 2005) ..............................................................................................................................3, 6

*White v. Osmose, Inc.*, 204 F. Supp. 2d 1309 (M.D. Ala. 2002) ...............................................3

*Wombles v. Title Max of Alabama, Inc.*, 2005 U.S. Dist. LEXIS 34733 (M.D. Ala. Dec. 7, 2005) ....................................................................................................................................3

## FEDERAL STATUTES

49 U.S.C. § 13501 ...........................................................................................................8

29 U.S.C. § 201 *et seq* ....................................................................................................2

29 U.S.C. § 206(a)(1) ......................................................................................................15

29 U.S.C. § 207(i) .................................................................................................14, 15, 18

29 U.S.C. § 213(a)(2) ......................................................................................................15

29 U.S.C. § 213(b)(1) ........................................................................................................7

29 U.S.C. § 216(b) ............................................................................................................2

29 C.F.R. § 778.120(a) ....................................................................................................15

29 C.F.R. § 779.332 ........................................................................................................15

29 C.F.R. § 779.417 ........................................................................................................18

29 C.F.R. § 779.419 ........................................................................................................18

29 C.F.R. § 782.2(b)(3) .....................................................................................................9

29 C.F.R. § 782.7(b)(1) .....................................................................................................9

# MISCELLANEOUS

DOT Policy Statement, 46 Fed. Reg. 37,902 (July 23, 1981) .......................... ..................... 11

James M. Fraser, Opt-in Class Actions Under the FLSA, EPA, and ADEA: What Does It
    Mean To Be "Similarly Situated"?, 38 Suffolk U. L. Rev. 95 (2004)................. ................ 2

TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT ........................................................................................ 1

FACTUAL BACKGROUND ................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

I.      PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE PLAINTIFFS HAVE NOT PROVIDED
        SUBSTANTIAL FACTUAL EVIDENCE TO ESTABLISH THEY ARE SIMILARLY SITUATED TO THE
        PROPOSED CLASS ...................................................................................................... 2

        A.      THE STATUTORY FRAMEWORK ......................................................................... 2

        B.      THE MEAGER ALLEGATIONS CONTAINED IN PLAINTIFFS' TWO (2) UNSWORN
                DECLARATIONS ARE INSUFFICIENT TO ESTABLISH THAT PLAINTIFFS ARE
                "SIMILARLY SITUATED" TO THE EMPLOYEES THEY SEEK TO REPRESENT ............... 4

II.     PLAINTIFFS' MOTION SHOULD BE DENIED ON THE GROUND THAT HIGHLY INDIVIDUALIZED
        FACTUAL DETERMINATIONS PRECLUDE COLLECTIVE ADJUDICATION .............................. 6

        A.      THE POTENTIAL CLASS MEMBERS ARE NOT SIMILARLY SITUATED BECAUSE AN
                INDIVIDUALIZED FACTUAL ANALYSIS IS REQUIRED TO DETERMINE WHETHER EACH
                PURPORTED CLASS MEMBER IS SUBJECT TO THE MOTOR CARRIER EXEMPTION ........... 7

        B.      THE POTENTIAL CLASS MEMBERS ARE NOT SIMILARLY SITUATED BECAUSE AN
                INDIVIDUALIZED ANALYSIS IS REQUIRED TO DETERMINE WHETHER EACH
                PURPORTED CLASS MEMBER IS SUBJECT TO THE 7(I) EXEMPTION ........................ 14

        C.      INDIVIDUAL ANALYSIS REGARDING PLAINTIFFS' HOURS OF WORK WILL BE
                REQUIRED MAKING A COLLECTIVE ACTION IMPOSSIBLE .................................... 18

III.    EVEN IF THE COURT WERE TO GRANT PLAINTIFFS' MOTION, IN WHOLE OR IN PART,
        PLAINTIFFS' PROPOSED FORM OF NOTICE MUST BE MODIFIED .................................... 20

        A.      TRAINEES AND ROUTE MANAGERS MUST BE EXCLUDED FROM THE NOTICE ............. 20

        B.      THE TEXT OF PLAINTIFFS' PROPOSED NOTICE IS NEEDLESSLY CONFUSING, FAILS
                TO CONVEY JUDICIAL NEUTRALITY AND IS OVERLY SOLICITOUS OF CLAIMS ............ 21

        C.      THE NOTICE IS MISLEADING ........................................................................... 23

IV.     THE COURT SHOULD STAY RULING ON THE MOTION FOR NOTICE UNTIL THE SUMMARY
        JUDGMENT MOTION IS DECIDED .................................................................................. 24

CONCLUSION .................................................................................................................. 24

As counsel for Defendant Ecolab Inc. ("Defendant" or "Ecolab"), we submit this memorandum of law in opposition to the November 15, 2006 "Motion To Conditionally Certify A Fair Labor Standards Act Collective Action And Authorize Notice To Be Issued To The Class" filed by named Plaintiff Jimmy English and opt-in Plaintiff Thomas Tourigny.

## SUMMARY OF THE ARGUMENT

Two of Defendant's former pest elimination employees, one who worked solely in California (and resigned almost two years ago) and the other in Kentucky (who resigned almost three years ago), ask the Court, based upon their conclusory and unsworn "Declarations" which relate entirely to their own discrete terms of employment, to issue notice to over two thousand current and former employees throughout the country whom Plaintiffs contend are owed unpaid overtime. Such meager evidence is insufficient to establish that a nation-wide class is "similarly situated." Additionally, the highly fact-intensive individualized inquiries required to resolve Plaintiffs' claims preclude collective adjudication. Moreover, electronic documents tracking Plaintiffs' hours of work during the three year period prior to filing their opt-in forms directly undermine their claims. Those records, as discussed *infra*, show that on average, Plaintiff English spent only 27.8 hours per week visiting customers and Plaintiff Tourigny only 24.5 hours per week, rendering each an unsuitable lead Plaintiff.

## FACTUAL BACKGROUND

The facts necessary to the resolution of the present motion are set forth in the affidavit of David Beehler, dated January 29, 2007 ("Beehler Aff.") and the affirmation of Jeffrey W. Brecher, Esq., dated January 29, 2007 ("Brecher Aff."), and incorporated herein by reference.

## ARGUMENT

**I.**   **PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE PLAINTIFFS HAVE NOT PROVIDED SUBSTANTIAL FACTUAL EVIDENCE TO ESTABLISH THEY ARE SIMILARLY SITUATED TO THE PROPOSED CLASS**

### A.   THE STATUTORY FRAMEWORK

Under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), in order for an employee to bring a collective action, the employee has the burden of proving he is "similarly situated" to those he seeks to represent. 29 U.S.C. § 216(b); Hofmann La Roche v. Sperling, 493 U.S. 165 (1989). The FLSA's "collective action" is distinguishable from a Rule 23 "class action" in that those wishing to join must affirmatively opt-in by filing a consent form. Torres v. Gristede's Operating Corp., 2006 U.S. Dist. LEXIS 74039, *22 (S.D.N.Y. September 28, 2006). In a Rule 23 class, in contrast, once a class is certified, all members are participants unless they affirmatively opt-out. Id. Although the Second Circuit has not articulated a test for determining whether a named plaintiff is "similarly situated" to those he seeks to represent (and the FLSA does not contain any definition of the term), district courts, including this Court, have generally adopted a "two-step" approach. Id.; Prizmic v. Armour, Inc., 2006 U.S. Dist. LEXIS 42627, *6-** (S.D.N.Y. June 12, 2006); Flores v. Osaka Health Spa, Inc., 2006 U.S. Dist. LEXIS 11378 (S.D.N.Y. Mar. 16, 2006).[1]

The first stage, sometimes referred to as the "notice" phase, occurs before discovery has been completed. Although the plaintiff's burden at the notice phase is not "onerous," conclusory allegations are insufficient. Prizmic, at *6. Rather, to obtain an order authorizing notice to be sent to putative class members, the plaintiff must make "substantial" allegations that he or she and the proposed

---

[1]   Although Defendant acknowledges the two-step analytical framework discussed herein, see, e.g., Torres, supra, and are accordingly opposing Plaintiffs' Motion under that framework, Defendant maintains that the standard which most accurately reflects Congressional intent with regard to FLSA collective actions (and the standard that this Court should apply) requires that Plaintiffs satisfy all of the requirements of Fed. R. Civ. P. 23 that are not inconsistent with Section 216(b) – i.e., all the requirements of Rule 23 except that provision requiring members of the class to opt-out of the class to avoid being bound by the judgment. See Shushan v. University of Colorado, 132 F.R.D. 263 (D. Colo. 1990) (requiring plaintiffs to satisfy the requirements of Rule 23 that are not inconsistent with § 216(b) to prove they are "similarly situated"); James M. Fraser, Opt-in Class Actions Under the FLSA, EPA, and ADEA: What Does It Mean To Be "Similarly Situated"?, 38 Suffolk U. L. Rev. 95 (2004) (arguing that courts should apply Rule 23's requirements to determine whether plaintiffs are "similarly situated" for the purposes of § 216(b) actions). Defendant respectfully reserves its right to raise this issue on appeal.

putative class were, together, victims of a "common policy or plan that violated the law." Scholtisek v. Eldre Corp., 229 F.R.D. 381, 387 (W.D.N.Y. 2005); Richards v. Computer Sciences Corp., 2004 U.S. Dist. LEXIS 19638, *8 (D. Conn. Sept. 28, 2004); Mooney v. Aramco Services Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995). Where individualized factual determinations predominate, class members cannot be "similarly situated". See Diaz v. Elect. Boutique of Am., Inc., 2005 U.S. Dist. LEXIS 30382, *13-15 (W.D.N.Y. Oct. 17, 2005) (finding plaintiffs were not "similarly situated" to those they sought to represent based on the existence of individual inquiries needed to resolve plaintiffs' exempt status). At the second stage (after discovery is completed), the plaintiff must satisfy a more rigorous standard. See Torres, 2006 U.S. Dist. LEXIS 74039 at *23. Applying the foregoing standard, Courts in this Circuit have often refused to authorize notice at the first stage of the two-step process.[2]

---

[2]    Cases within the Second Circuit denying a plaintiff's request to send notice include: Prizmic, supra (denying motion for collective certification of asbestos installers based on insufficient factual evidence); Flores, supra (rejecting attempt to certify collective action of spa masseuses based upon insufficient evidence of unlawful policy or plan); Barfield v. N.Y. City Health and Hosps. Corp., 2005 U.S. Dist. LEXIS 28884 (S.D.N.Y. Nov. 17, 2005) (denying motion for collective certification of hospital nurses and holding that "anecdotal hearsay" was insufficient to establish purported company-wide unlawful policy or plan); Diaz, supra (W.D.N.Y. Oct. 17, 2005) (denying, inter alia, motion for collective certification and holding that determination of whether putative class of retail store managers were "similarly situated" was not susceptible to collective adjudication); Levinson v. Primedia Inc., 2003 U.S. Dist. LEXIS 20010 (S.D.N.Y. Nov. 6, 2003) (rejecting motion to collectively certify purported class of website "guides" on the ground that the plaintiffs failed to make even a "modest factual showing" that the class was "similarly situated"); Madrid v. Minolta Bus. Solutions, Inc., 2002 U.S. Dist. LEXIS 18539 (S.D.N.Y. Oct. 1, 2002) (rejecting motion for collective certification and refusing to approve issuance of notice to dispatchers who alleged a class-wide failure to pay overtime).

        District Court decisions from the Second Circuit are consistent with an emerging trend by federal courts throughout the country to deny (or severely limit the scope of) collective certifications in FLSA cases. See Dreyer v. Altchem Envt. Servs., Inc., 2006 U.S. Dist. LEXIS 93846, *4 (D.N.J. December 12, 2006); Harris v. FFE Transp. Servs., Inc., 2006 U.S. Dist. LEXIS 51437 (N.D. Tex. May 15, 2006) (refusing collective certification based upon individual nature of claims). Aguirre v. SBC Communications, Inc., 2006 U.S. Dist. LEXIS 22211 (S.D. Tex. Apr. 11, 2006); Landsberg v. Acton Enter., Inc., 2006 U.S. Dist. LEXIS 23439 (S.D. Ohio Mar. 22, 2006); Rodgers v. CVS Pharmacy, 2006 U.S. Dist. LEXIS 23272 (M.D. Fla. Mar. 22, 2006); Wombles v. Title Max of Alabama, Inc., 2005 U.S. Dist. LEXIS 34733 (M.D. Ala. Dec. 7, 2005); Tyler v. Payless Shoe Source, Inc., 2005 U.S. Dist. LEXIS 31682 (M.D. Ala. Nov. 22, 2005); Persin v. Career Builders, LLC, 2005 U.S. Dist. LEXIS 23095 (N.D. Ill. Sept. 21, 2005) (refusing collective certification and noting the lenient standard applied at the notice phase "does not absolve [the plaintiff] of his burden to show some sort of indication that he and the group he seeks to address share some fundamental characteristics"); Harrison v. McDonald's Corp., 411 F. Supp. 2d 862 (S.D. Ohio 2005); Horne v. U.S. Auto. Assoc., 279 F. Supp. 2d 1231 (M.D. Ala. 2003) (refusing collective certification where the plaintiff failed to sufficiently identify individuals who worked overtime hours pursuant to alleged policies and procedures of employer); Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941 (W.D. Ark. 2003) (refusing collective certification where the plaintiff failed to show that purported class of thousands of employees with materially different duties and responsibilities were similarly situated and noting that "it is incumbent upon [p]laintiff to propose a class that is sufficiently defined and manageable from the outset"); Marsh v. Butler Co. Sch. Sys., 242 F. Supp. 2d 1086 (M.D. Ala. 2003) (refusing collective certification and noting that a plaintiff must show a commonality between his claims and those of the potential plaintiffs that is "beyond the mere facts of job duties and pay provisions, because without such a requirement, it is doubtful that § 216(b) would further the interests of judicial economy

B.   THE MEAGER ALLEGATIONS CONTAINED IN PLAINTIFFS' TWO (2) UNSWORN DECLARATIONS ARE INSUFFICIENT TO ESTABLISH THAT PLAINTIFFS ARE "SIMILARLY SITUATED" TO THE EMPLOYEES THEY SEEK TO REPRESENT

Courts have been particularly vigilant against authorizing notice where the named plaintiff seeks certification of a broad putative class based upon conclusory allegations and anecdotal hearsay. In Flores, supra, for example, the named plaintiff worked as a masseuse and sought to certify an FLSA collective action of other masseuses who the plaintiff alleged, inter alia, were not paid overtime. In support of her request for collective certification, the plaintiff submitted evidence regarding the hours that she worked and her alleged "understanding" of hours worked by the putative class members. The Court rejected the plaintiff's request for collective certification concluding that allegations regarding plaintiffs own hours was insufficient to establish the hours that other employees worked:

> The submissions made by the plaintiff to the Court do not provide any factual information concerning the basis for [her] understanding of the quantum of work performed by other massage therapists assigned to work during the shift on which she worked . . . [a]s such, they offer nothing of evidentiary value to support a finding that a factual nexus exists between the way that defendants allegedly compensated [the plaintiff] and the way they may have compensated other employees during the relevant time period.

Id. at *8.  See also Landsberg, supra (rejecting collective certification on the ground that two affidavits are insufficient to establish that a national class is similarly situated); Barfield v. N.Y. City Health and Hosps. Corp., 2005 U.S. Dist. LEXIS 28884 (S.D.N.Y. Nov. 17, 2005) (denying motion for collective certification of hospital nurses and holding that "anecdotal hearsay" was insufficient to establish purported company-wide unlawful policy or plan); Levinson v. Primedia, Inc., 2003 U.S. Dist. LEXIS 20010, *4-5 (S.D.N.Y. 2003) (denying motion for conditional certification and noting, "While plaintiffs have provided factual assertions in support of the claim . . . that they were deprived of . . . overtime rates, they have failed to make a sufficient showing that the same was true for other potential plaintiffs.") (emphasis in original);

---

. . ."); Sheffield v. Orius Corp., 2002 U.S. Dist. LEXIS 23781 (D. Or. Sept. 13, 2002) (refusing collective certification and noting that "[p]utative class members must share more than a common allegation that they were denied overtime or paid below the minimum wage. The class members must put forth a common legal theory upon which each member is entitled to relief"); White v. Osmose, Inc., 204 F. Supp. 2d 1309 (M.D. Ala. 2002) (refusing to certify a nationwide class of current and former employees who were allegedly "similarly situated" with respect to their job duties and pay because there was no evidence that the employer's policies necessarily led to FLSA violations on a national basis)

Madrid v. Minolta Business Solutions, Inc., 2002 U.S. Dist. LEXIS 18539, *8 (S.D.N.Y. Oct. 22, 2002);

Rodgers v. CVS Pharmacy, Inc., 2006 U.S. Dist. LEXIS 23272, *7 (M.D. Fla., March 22, 2006)

("Certification of a collective action and notice to a potential class is not appropriate to determine *whether*

there are others who desire to join the lawsuit.") (emphasis in original).

    Here, the evidence propounded in support of Plaintiffs' motion consists entirely of

Plaintiffs' own declarations.[3]  Plaintiffs' Declarations relate to their own discrete terms of employment with

Ecolab in Kentucky and California, respectively.  Plaintiffs do not offer any evidence regarding the

approximate 14 regions and 150 districts in which they did not work.  Courts must require more.  To

authorize Notice based on unsworn Declarations that relate only to Plaintiffs' own employment setting

grants any employee a license to subject their employer to a nationwide class action on a whim.  See

Prizmic, 2006 U.S. Dist. LEXIS 42627, *7 (noting that granting notice based on conclusory allegations can

cause an employer to be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the

employer's expense); see also Dreyer v. Altchem Envt. Servs., Inc., 2006 U.S. Dist. LEXIS 93846, *4

(D.N.J. Dec. 12, 2006) (noting that the similarly situated standard must be sufficient to prevent "class

action fishing expeditions").  The Court is charged with the responsibility of determining whether Plaintiffs

are similarly situated to those they seek to represent, not Plaintiffs.  Permitting Notice to be sent simply

because the Plaintiffs *allege* they are similarly situated, instead of requiring a factual finding that they *are*

similarly situated, essentially eviscerates the Court's statutory role.  At a minimum, Plaintiffs should be

required to offer *some* factual evidence developed through discovery prior to granting such extraordinary

relief.  This is especially true here where the evidence belies Plaintiffs' conclusory allegations about their

own hours of work.  As evidenced by Plaintiffs' E-Stat records (which record the time each customer visit

---

[3]  Indeed, insofar as Plaintiffs' purported Declarations are unsworn, they should be afforded little if any weight.  See Reich v. Waldbaum, Inc., 833 F. Supp. 1037, 1050 (S.D.N.Y. 1993), rev'd on other grounds, 52 F.3d 35 (2d Cir. 1995). See also Bosch v. Title Max, Inc., 2004 U.S. Dist. LEXIS 30162 (N.D. Ala. Aug. 25, 2004), at *2-*4 (striking twenty one (21) unsworn affidavits offered by the plaintiffs which did not "use any of the language suggested by the [United States] Code, and in no way evidenced any intent by the affiants to present their testimony under oath as would be required in a Court").

begins and ends) during the relevant time period,[4] Plaintiff English spent, on average, only 27.8 hours per week visiting customers; and Plaintiff Tourigny worked, on average, 24.5 hours per week. Brecher Aff. ¶ 5. Indeed, according to the E-Stat data, during the potentially relevant period, there were <u>no</u> weeks when Plaintiff Tourigny worked over forty hours in a workweek, and only 11 out of 59 weeks where Plaintiff English potentially could have worked more than 40 hours. <u>Id.</u> The Court should not permit a nationwide notice based solely on Plaintiffs' Declarations when those Declarations are directly contrary to the documentary evidence regarding their hours of work. Plaintiffs have not met their burden to prove they are similarly situated and the motion should be denied on this ground alone.

## II.   PLAINTIFFS' MOTION SHOULD BE DENIED ON THE GROUND THAT HIGHLY INDIVIDUALIZED FACTUAL DETERMINATIONS PRECLUDE COLLECTIVE ADJUDICATION

When individualized factual determinations predominate, as is the case here, courts have routinely found class members are not "similarly situated". <u>See, e.g.,</u> <u>Diaz v. Elect. Boutique of Am., Inc.,</u> 2005 U.S. Dist. LEXIS 30382, *13-15 (W.D.N.Y. Oct. 17, 2005); <u>Scholtisek v. Eldre Corp.,</u> 229 F.R.D. 381, 389 (W.D.N.Y. 2005) (noting that "dissimilarities" among purported class members "will often be relevant to whether the employees are similarly situated for purposes of the FLSA, insofar as their job duties relate to whether they were correctly classified as exempt from the FLSA's overtime requirements"); <u>Tyler v. Payless Shoe Source, Inc.,</u> 2005 U.S. Dist. LEXIS 31682 (M.D. Ala. Nov. 22, 2005) at *19 (rejecting collective certification and explaining that "the parties in this case have presented sufficient evidence at this stage to demonstrate that a determination as to whether or not potential plaintiffs are similarly situated would require a fact-specific, case-by-case inquiry by the Court"); <u>Harris,</u> 2006 U.S. Dist. LEXIS 51437 at *10 (holding that "even a brief recounting of the respective job titles and duties of the named plaintiffs make it abundantly clear that there is considerable variation in the factual and employment

---

[4]      Because the FLSA has, at *most*, a three year statute of limitations (for willful violations), Defendant submits the data for the three year period prior to the time Plaintiffs English and Tourigny filed their opt-in forms—7/27/06 for English and 8/8/06 for Tourigny. Because their employment ended, however, years before they filed suit, the applicable claim period for Plaintiff English is 7/27/03 – 10/27/04 (date of permanent disability leave); and for Plaintiff Tourigny 8/8/03 – 10/12/03 (date of termination). <u>See</u> Beehler Aff. ¶¶ 38 and 42. Thus, Tourigny's claim would survive only if the Court found any violation of the FLSA was willful, and even if such a finding was made, his claim would be limited to only eight weeks. If the two year statute of limitations applied, Plaintiff Tourigny's claims would be barred and Plaintiff English's claim would be limited to three months.

settings" in the case); <u>Reich v. Homier Distributing Co.</u>, 362 F. Supp. 2d 1099 (N.D. Ind. Mar. 22, 2005) (refusing to authorize notice because of the individual factual inquiries necessary in applying the motor carrier exemption); <u>Clausman v. Nortel Networks, Inc.</u>, 2003 U.S. Dist. LEXIS 11501 (S.D. Ind. May 1, 2003) (refusing to authorize notice due to the individual factual inquiries related to application of the outside sales exemption); <u>Dean v. Priceline.com, Inc.</u>, 2001 U.S. Dist. LEXIS 24988 (D. Conn. May 9, 2001) (denying plaintiff's motion to proceed collectively because the exempt or non-exempt status of any particular employee had to be determined on a case by case basis); <u>Mike v. Safeco Ins. Co.</u>, 274 F. Supp. 2d 216 (D. Conn. 2003) (same); <u>Holt v. Rite Aid Corp.</u>, 333 F. Supp. 2d 1265, 1271 (M.D. Ala. 2004) ("the 'similarly situated' inquiry in this case must be analyzed in terms of the nature of the job duties performed by each putative plaintiff, because the ultimate issue to be determined is whether each employee was properly classified as exempt.").

A.  THE POTENTIAL CLASS MEMBERS ARE NOT SIMILARLY SITUATED BECAUSE AN INDIVIDUALIZED FACTUAL ANALYSIS IS REQUIRED TO DETERMINE WHETHER EACH PURPORTED CLASS MEMBER IS SUBJECT TO THE MOTOR CARRIER EXEMPTION

1.  THE LEGAL FRAMEWORK

The Motor Carrier Act ("MCA") was enacted in 1935 in response to congressional concerns about the safety of interstate commerce. <u>Bilyou v. Dutchess Beer Distributors, Inc.</u>, 300 F.3d 217, 221, n.2 (2d Cir. 2002); <u>Peraro v. Chemlawn Servs. Corp.</u>, 692 F. Supp. 109, 113 (D. Conn. 1988). It gives the Secretary of Transportation the power to set qualification standards and maximum hours of service for employees engaged in interstate commerce. 29 U.S.C. § 213(b)(1). Whereas the overtime provision of the FLSA is primarily focused on requiring compensation for additional hours worked, the MCA limits hours worked to promote safety. <u>Sinclair v. Beacon Gasoline Co.</u>, 447 F. Supp. 5, 9 (W.D. La. 1976). To preserve the safety program promoted by the MCA, Congress prohibited dual regulatory jurisdiction of the Interstate Commerce Commission [now Department of Transportation] and the Department of Labor ("DOL") by exempting from the FLSA's overtime provisions those employees for whom the Secretary of Transportation has the power to prescribe qualifications and maximum hours of service. <u>Friedrich v. U.S.</u>

Computer Servs., 974 F.2d 409, 412 (3rd Cir. 1992).  This is the so-called "motor carrier exemption."

When the MCA applies to a given employment situation, the FLSA does not.  Peraro, 692 F. Supp. at 113.

In Levinson v. Spector Motor Servs., 330 U.S. 649, 661-62 (1947), the Supreme Court

noted that Congress could have permitted both acts to apply concurrently, but did not:

> It [Congress] might have permitted both acts to apply.  There is no
> necessary inconsistency between enforcing rigid maximum hours of service
> for safety purposes and at the same time, within those limitations, requiring
> compliance with the increased rates of pay for overtime work done in excess
> of the limits set in Section 7 of the FLSA.  Such overlapping, however, has
> not been authorized by Congress and it remains for us to give full effect to
> the safety program to which Congress has attached primary importance,
> even to the corresponding exclusion by Congress of certain employees from
> the benefits of the compulsory overtime pay provisions of the Fair Labor
> Standards Act.

Levinson, 330 U.S. at 661-62.

In support of its decision prohibiting dual FLSA-MCA coverage, the Supreme Court stated

that the MCA was aimed at limiting the number of hours worked to promote safety.  The policy of

promoting safety on the highways, the Court held, would be threatened by requiring extra compensation for

overtime (i.e., overtime compensation may encourage employees to work *more* hours, not less, thereby

defeating the safety goal).  In pertinent part, the Supreme Court held:

> While a requirement of pay that is higher for overtime service than for
> regular service tends to deter employers from permitting such service, it
> tends also to encourage employees to seek it.  The requirement of such
> increased pay is a remedial measure adapted to the needs of an economic
> and social program rather than a police regulation adapted to the rigid
> enforcement required in a safety program.

Id. at 657.  In sum, even though the motor carrier exemption may result in excluding employees from

coverage under the FLSA, Congress made this choice to promote safety.

In order for the motor carrier exemption to apply, the employees, among other things, must

be engaged in "transportation" as defined by 49 U.S.C. § 13501 (i.e., interstate transportation).  Interstate

travel (i.e., travel from one state to another) obviously satisfies the interstate commerce requirement needed

to apply the exemption.  Similarly, even if an employee does not transport property in interstate commerce,

the employee is still subject to the exemption if, in the regular course of employment, he *could be* called upon to transport a shipment in interstate commerce. See 29 C.F.R. § 782.2(b)(3); Elliot v. Dave Ernstes & Sons Trucking, 2006 U.S. Dist. LEXIS 72278, *16 (S.D. Ind. October 3, 2006) (holding that where a driver is or is likely to be called upon in the course of his work to engage in interstate transportation, the exemption applies); Badgett v. Rent-Way, Inc., 350 F. Supp. 2d 642 (W.D. Pa. 2004); Masson v. Ecolab, 2005 U.S. Dist. LEXIS 18022, *32 (S.D.N.Y. Aug. 18, 2005) (denying summary judgment finding factual issues existed regarding whether Plaintiffs were likely to have ordered items for a specific customer).

It is also equally well settled that travel within a single state (*i.e.*, *intra*state travel) is also sufficient to apply the exemption where the goods being transported within the borders of one state are involved in a "practical continuity of movement" in the flow of interstate commerce. See Bilyou, 300 F.3d at 223-24. This is determined by the reference to the intended final destination (*i.e.*, when the goods left their place of origin, if the intended final destination was a location in another state and an employee transports the property during any phase of this trip, the motor carrier exemption applies). Stated differently, where the *intrastate* travel forms one leg of an interstate trip, it satisfies the interstate commerce requirement. Id.; see also Talton v. Caffey Distrib. Co., 2005 U.S. App. LEXIS 927, *10 (4th Cir. Jan. 18, 2005) ("Courts have interpreted [DOT's] authority to extend not just to carriers who actually cross state lines while transporting goods, but also to carriers whose cargo originates from outside the state or is ultimately bound for a destination outside the state, even where the carrier's route is entirely intrastate"); 29 C.F.R. § 782.7(b)(1). The exemption can apply, for example, if products are shipped to an employee from out-of-state for later delivery to a specific customer. It also applies even if product is not shipped from out-of-state for a specifically identified customer, so long as it is shipped based on anticipation of customer's need. See, e.g., Ruiz v. Affinity Logistic Corp., 2006 U.S. Dist. LEXIS 82201 (S.D. Cal., Nov. 6, 2006) ("in-state transportation is a part of a continuing movement in interstate commerce where, although the shipper does not know in advance the ultimate destination of specific shipments, it bases its determination of the total volume to be shipped through the warehouse on projections of customer demand that have some

9

factual basis, rather than a mere plan to solicit future sales within the State") (citing DOL Policy Statement MC-207, 1992 MCC LEXIS 50 (Apr. 27, 1992)); Masson, 2005 U.S. Dist. LEXIS 18022, at *30-32.

In Bilyou, the seminal case in the Second Circuit analyzing the exemption, for example, the Second Circuit held that drivers who collected empty glass, plastic and aluminum cans [i.e., returns] for shipment to an out-of-state facility for processing were engaged in interstate commerce even though they traveled entirely within New York because this shipment was "one leg of a route to an out of state destination." Bilyou, 300 F.3d at 224. Similarly, the district court in Bilyou held the motor carrier exemption applied where employees delivered beer that was shipped from out-of-state (even though not identified for a specifically named customer) because the shipments were based on anticipated customer need, demonstrating an intent to continue its interstate journey even though the product reached a warehouse for a temporary period. Bilyou, 2001 U.S. Dist. LEXIS 3342 (S.D.N.Y. Mar. 9, 2001).[5] See also, Billings v. Rolling Frito-Lay Sales, 413 F. Supp. 2d 817 (S.D. Tex. 2006) (finding Route Sales Representatives were exempt under the motor carrier exemption even though they transported property only in-state and products were not ordered for specific customers, but based on a forecast of customer demand); Atl. Indep. Union v. Sunoco, Inc., 2004 U.S. Dist. LEXIS 11223 (E.D. Pa. June 16, 2004) (motor carrier exemption applied to employees who delivered oil and petroleum products only in-state where products were not ordered for specific customers, but were still based on a sales forecast of customer need); Guyton v. The Schwan Food Co., 2004 U.S. Dist. LEXIS 4174 (D. Minn. Mar. 16, 2004), aff'd, 2005 U.S. App. LEXIS 1883 (4th Cir. 2005) (same).

Thus, the motor carrier exemption applies to employees who (a) transport property across state lines; (b) could be called to transport property across state lines; or, (c) transport property intrastate (or could be called to transport property intrastate) as part of a "practical continuity of movement" (e.g.,

---

[5] Because the Second Circuit on appeal found the transportation of empty glass, plastic and aluminum cans [returns from customers for recycling] by itself was sufficient for the motor carrier exemption to apply, the Second Circuit did not address this issue.

employees who transport property to a customer that was shipped to their home for later delivery to a customer or shipped to a warehouse based on a specific order or based on projections of customer demand).

An employee will be subject to the exemption for a four month period from the date of the interstate travel, also known as the "4-month rule". See Elliot, 2006 U.S. Dist. LEXIS 72278, at *17; Badgett, 350 F. Supp. at 657 ("noting the Department of Labor has accepted this 4-month rule"); DOT Policy Statement, 46 Fed. Reg. 37,902 (July 23, 1981) ("Evidence of driving in interstate commerce or being subject to being used in interstate commerce should be accepted as proof that the driver is subject to 49 U.S.C. 304 for a 4-month period from the date of the proof").

2.   THE APPLICABILITY OF MOTOR CARRIER EXEMPTION REQUIRES AN INDIVIDUALIZED ANALYSIS

Based on the numerous ways in which the motor carrier exemption can apply, determining whether the exemption is applicable requires a fact-intensive inquiry regarding each individual employee, making trial on a collective basis impossible. For example, critical distinctions exist among the putative class with respect to the scope of their interstate travel. Some of the potential class members regularly (but to varied extents) cross state lines; Beehler Aff. ¶ 33. Some do not. Id. Thus, each individual class member's interstate activity must be analyzed to determine whether they satisfy the 4-month rule. In this regard, discovery must be conducted regarding the precise route each class member covers and the nature and extent of their interstate travel. This will require the examination of each individual's E-Stat reports (which list the customers they visited) in order to identify whether the customers are located in two different states, and frequency with which they visited these customers. This cannot be done on a class-wide basis; it must be done for each individual member of the class.

These individualized inquiries will be further complicated by the fact that, even among those purported class members who do cross state lines, material distinctions exist with respect to the reason for their interstate travel. Some cross state lines to obtain equipment/product (which E-Stat data would not capture, and for which gas receipts, credit card statements, and other documents will need to be examined). Id. at ¶ 35. Others cross state lines to service customers. Id. Some do both. Id. Thus, since

11

the factual issues involving claims of employees who travel across state lines are completely different from those who do not cross state lines, these two distinct classifications of putative class members cannot be similarly situated.[6]

For the remaining potential class members who <u>do not</u> cross state lines, a different analysis is necessary, since as described above, the motor carrier exemption also applies to *intra*state travel. In this regard, records reflecting <u>each</u> individual Specialists' receipt of the equipment and/or product from Ecolab and records reflecting the use of such product/equipment in connection with particular customer service visits, must be analyzed over at least a two year period. Furthermore, over at least a two year period, the parties and the Court must carefully scrutinize each putative class members' customer visits, both through written discovery and depositions, to determine whether the product/equipment used (a) was delivered to them for delivery to a particular customer; (b) was sent to them in anticipation of customer needs based on forecasts; (c) a combination of both; or, (d) whether they could be called upon to make such a delivery. This, again, cannot be performed on a class basis.

Indeed, due to the impracticalities inherent in class-wide application of the motor carrier exemption, Courts have denied motions, like the one present here, seeking collective certification of employees who may be subject to this exemption. In this regard, <u>Reich</u>, <u>supra</u>, is directly on point. In <u>Reich</u>, the plaintiff brought a collective action alleging that her employer violated the FLSA by failing to pay her and similarly situated employees overtime. The plaintiff in <u>Reich</u>, like Plaintiffs here, moved for an order approving a collective action notice.[7] The defendant opposed the motion arguing the plaintiff was exempt under the motor carrier exemption and that, because an individualized inquiry would be necessary

---

[6]     We are aware that Plaintiffs will argue the motor carrier exemption is inapplicable after August 10, 2005 due to legislation (wholly unrelated to the FLSA) changing the definition of motor private carrier to exclude vehicles under 10,001 lbs. Defendant denies any change has occurred to the motor carrier exemption. Indeed, the Department of Labor after August 10, 2005 issued an opinion letter applying the exemption to smaller vehicles, and there is no indication that Congress intended any change to the motor carrier exemption. Because Plaintiffs English and Tourigny resigned prior to August 10, 2005, any change to the exemption does not affect them. Moreover, to the extent Plaintiffs argue the exemption no longer applies, this distinction further destroys their claim they are similarly situated since their claims will require resolution regarding the applicability of the motor carrier exemption, and the claims of other alleged class members may not.

[7]     The plaintiff in <u>Reich</u> was represented by the same counsel who represents Plaintiffs in this action.

to determine the exempt status of each employee, the court should reject collective action notice. The Court agreed, finding that because the applicability of the exemption depended upon each specific employees' job duties, the case could not proceed as a collective action:

> The upshot is that determining whether Reich or any other sales partner qualifies as a loader (and is therefore exempt from the FLSA) will require a highly individualized, fact-specific inquiry. Extensive discovery will be necessary to ascertain whether each sales partner was ever responsible for loading, and if so, (1) how often; (2) for how long; and (3) how much of that loading required the exercise of discretion, if any. As Homier aptly notes, 'if this matter proceeds as a collective action, it will be impossible to come up with a class-wide determination on liability.'

Id. at 11.

Here, as in Reich, highly individualized factual determinations will be necessary to determine whether some or all of the putative class members are subject to the motor carrier exemption.

While the Court in the Masson case (involving overtime claims brought by Route Managers) granted Plaintiffs' request to conditionally certify a collective action where the motor carrier exemption was also raised as an affirmative defense, discovery in that case has demonstrated that individual factual inquiries will make collective treatment impossible in that case.[8] In Masson, District Judge Mukasey had to make his decision regarding conditional certification based on predictions regarding whether individual inquiries would predominate. This Court, however, is in a different position. It does not have to base its decision on predictions. The Court now has the benefit of examining the discovery in the Masson case completed thus far, which has irrefutably demonstrated that individual inquiries dominate. Thus the Masson case compels denial of Plaintiffs' motion to conditionally certify the class.

The following is just a sample of the hundreds of variations within the Masson class, demonstrating that conditional certification here is impractical

1.    With respect to the issue of whether class members traveled across state lines, interrogatory answers ranged from daily, weekly, monthly, quarterly to never (and anything in between, e.g., four times a month). Brecher Aff., Exh. D. Indeed, the

---

[8]    Defendant intends to file a motion to decertify the Masson case once discovery is completed.

issue of interstate travel (i.e., crossing state lines) resulted in numerous opt-in Plaintiffs being voluntarily withdrawn from the case.

2.   With respect to the issue of whether Plaintiffs transported property shipped to their home for delivery to a specific customer, again the answers were also anything but uniform. Interrogatory responses ranged from daily, weekly, bi-weekly, monthly, quarterly, to never (again, with everything in between).

3.   With respect to the issue of whether class members were required to transport property being returned to Ecolab, the answers again varied widely, ranging from weekly, monthly, quarterly, and never (and everything in between).

A mere perusal of the interrogatory responses (not to mention the inconsistent deposition testimony) demonstrates that no uniformity exists and issues relating to the motor carrier exemption can be decided only on an individual basis. A chart illustrating the varied responses is attached to the Brecher Aff. as Exhibit D. Plaintiffs herein are similarly situated only in the sense that, like the Plaintiffs in Masson, they attempt to rely on sweeping generalities in an effort to compel notice, but upon closer inspection their claims can be resolved only through an individualized inquiry.

B.   THE POTENTIAL CLASS MEMBERS ARE NOT SIMILARLY SITUATED BECAUSE AN INDIVIDUALIZED ANALYSIS IS REQUIRED TO DETERMINE WHETHER EACH PURPORTED CLASS MEMBER IS SUBJECT TO THE 7(I) EXEMPTION

The "7(i) exemption" also renders collective certification inappropriate. Like the motor carrier exemption, Section 7(i) requires an individualized inquiry regarding each class member's claim.

1.   GENERAL PRINCIPLES REGARDING APPLICATION OF THE 7(I) EXEMPTION

The 7(i) exemption is applicable to certain retail or service establishment employees who are paid on a commissioned basis. See 29 U.S.C. § 207(i). In relevant part, the 7(i) exemption provides:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title,

and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

29 U.S.C. § 207(i). To be entitled to the exemption, an employer must satisfy three requirements: (a) the employer must demonstrate that the employee was employed at a "retail or service establishment;" (b) the employee's regular rate of pay must exceed one and one-half times the minimum hourly rate; and, (c) more than half of the employee's compensation for a representative period (not less than one month) must represent commissions on goods or services. Id. See Schwind v. EW & Assoc., Inc., 371 F. Supp. 2d 560, 563 (S.D.N.Y. 2005). A retail or service establishment within the meaning of the FLSA means "an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." Id.; 29 C.F.R. § 779.332.[9] The 7(i) exemption is *not* based on the duties of the employee; but rather, solely on the pay received by an employee and the status of the employer as a retail or service establishment. Gieg v. DRR, Inc., 407 F.3d 1038, 1047 (9th Cir. 2005).

### 2. INDIVIDUAL INQUIRIES REGARDING WHETHER PLAINTIFFS' PAY EXCEEDS ONE AND ONE HALF THE MINIMUM WAGE WILL PREDOMINATE

The federal minimum wage since September 1, 1997, has been $5.15 per hour. See 29 U.S.C. § 206(a)(1). Therefore, to be exempt, the regular rate of pay for each member of the putative class must exceed $7.73 per hour ($5.15 x 1.5). To calculate Plaintiffs' regular rates of pay, each employee's total compensation must be divided by total hours worked. In the case of Plaintiffs, who were paid commissions based on a monthly formula, the regular rate of pay per week is calculated by adding total compensation for the month (commissions plus base salary), multiplying that figure by 12, and then dividing by 52 to obtain a weekly compensation amount. The weekly compensation is then divided by the total number of hours worked per week to obtain the regular rate of pay. See 29 C.F.R. § 778.120(a). The following example illustrates how the calculation is performed and how individual differences in putative class members change the applicability of the exemption:

---

[9]    The definition of a "retail or service establishment" is found in 29 U.S.C. § 213(a)(2), which although repealed in 1989, still remains in effect for purposes of the 7(i) exemption. See Schwind, 371 F. Supp. 2d at 564, n. 4.

> Assume an employee earns $1300 per month in base salary and $1350 in commissions. Assume also in that month he works 80 hours per week. The employee's regular rate of pay during each workweek during that month is $7.64 ($1300 + $1350 = $2650; $2650 x 12 = $31,800; $31,800/52 = $611.53; $611.53/80 hours = $7.64.

In this example, the employee would not be exempt under the 7(i) exemption for those particular workweeks because the regular rate of pay is less than 1.5 times the minimum wage (i.e., less than $7.73). Because the regular rate calculation is dependent on (1) the commissions earned per month; (2) the base salary earned per month; and, (3) the hours worked per month, slight variations of any of these factors could affect the applicability of the 7(i) exemption. For example, if in the scenario above, the number of hours was reduced by only five hours to 75 hours, the employee's regular rate of pay would increase to $8.15 per hour, satisfying the minimum wage requirement and rendering the employee exempt. Similarly, if the *same* number of hours were worked (80), but the *commissions* were increased during the month by only $50, the employee would meet the minimum wage requirement ($1300 + $1400 = $2,700; $2,700 x 12 = $32,400; $32,400/52 = $623.07; $623.07/80 = $7.78). This employee would be exempt in some workweeks, but not others.

These examples illustrate the highly fact specific and individualized inquiry that must be made with respect not only to each putative class member, but during each week of each persons' employment. The compensation earned by the Specialists vary dramatically because they are paid on a commission basis, ranging from $30,657 to $75,006 in 2005. Beehler Aff. ¶ 19. The commissions earned month to month, as discussed *infra*, can vary dramatically as well. No representative sample or analysis can be done; each individual's payroll records for each *month* will have to be analyzed and then compared to the fluctuating number of hours they claim they worked, which may result in the exemption applying in certain workweeks, and not in others. An analysis of the pay records of Plaintiffs English and Tourigny reveals they satisfied the minimum wage requirement, rendering them subject to the 7(i) exemption, which is why Defendant intends to move for summary judgment dismissing their claims. Plaintiffs English and Tourigny are, thus, ill-suited to lead this class and unworthy proponents of issuing notice.

3.   INDIVIDUAL INQUIRIES REGARDING PLAINTIFFS' COMMISSIONS WILL BE REQUIRED TO DETERMINE THE APPLICABILITY OF THE 7(I) EXEMPTION

The third requirement needed to establish the applicability of the exemption is proof that more than half of the employee's compensation for a representative period (not less than one month) must represent commissions on goods or services. To resolve this inquiry, if this case is conditionally certified, the parties and the Court will be compelled to examine thousands of pages of payroll documents to determine the precise extent of each class members' commissions, and whether the 50% requirement has been met. Again, there can be no representative sample, as the commission requirement must be met by each putative member of the class during each month of their employment (although weeks during the beginning or end of employment can be rolled into an adjacent month). For example, in September 2003, Plaintiff Tourigny earned $2,771.84 in commissions, but in January 2003, he earned $1,583.20. (See Beehler Aff. ¶ 18.) Although he qualifies for the exemption because his commissions exceeded his salary in both months, this example illustrates the extent to which commission income varies, which would necessarily impact on the applicability of the exemption.

There are also differences among the putative class members' commission structures insofar as (a) Trainees, unlike Specialists and Senior Specialists, are not paid any commissions, and thus would not be exempt under 7(i) (although they are paid overtime and should be excluded from the suit anyway); (b) Senior Specialists are paid additional commissions, for which Service Specialists are not eligible, i.e., on invoices which exceed $90,000; and, (c) commissions for regular customer visits are paid to Specialists based on an increasing percentage of monthly invoices, but Specialists are also eligible for additional commissions in connection with "one shot" pest elimination services/product, and new business, referred to as a "Pest Spiff", which varies from person to person. Beehler Aff. ¶¶ 15-17.

These types of fact-intensive inquiries can only be made on an individual basis. Indeed, if this Court were to certify this case as a collective action, the parties would essentially be litigating hundreds of individual lawsuits under the guise of one case caption. See Johnson v. TGF Precision Haircutters, Inc., 2005 U.S. Dist. LEXIS 44259 (S.D. Tex. Aug. 17, 2005) ("The proof required to establish these

17

individualized § 7(i) exemption defenses would become the overwhelming focus of a trial which, to a jury or factfinder, would amount to trials of perhaps as many of 200 individual cases"). Because of the individual inquiries necessary to determine the applicability of the exemptions, courts have recognized that the claims simply cannot be litigated as a collective action  The decision in <u>Johnson</u>, decertifying a collective action based on the application of the 7(i) exemption, provides a frank explanation of the problem in certifying such an action:

> § 7(i) is in fact a highly individualized defense because its application requires week-by-week and other periodic calculations (e.g., not less than monthly on one part of the formula) specific to each individual Plaintiff and his or her particular circumstances. The "regular rate" of pay, for example, "is a rate per hour, computed for the particular workweek by a mathematical computation in which hours worked are divided into straight time earnings for such hours to obtain the statutory regular rate." <u>29 C.F.R. § 779.419</u>; <i>see</i> <u>Schwind v. EW & Assocs., Inc.</u>, 371 F. Supp. 2d 560, 567 (S.D.N.Y. 2005). With respect to commissions, § 7(i) also requires the totaling of each particular Plaintiff's commissions over a "representative period" of not less than one month. <i>See</i> <u>29 U.S.C. § 207(i)</u>. This "representative period" is meant to be "a period which typifies the total characteristics of an employee's earning pattern in his current employment situation, with respect to the fluctuations of the proportion of his commission earnings to his total compensation." <u>29 C.F.R. § 779.417</u>. The proof required to establish these individualized § 7(i) exemption defenses would become the overwhelming focus of a trial which, to a jury or factfinder, would amount to trials of perhaps as many as 200 individual cases. Thus, the § 7(i) exemption defense weighs heavily in favor of decertification.

<u>Id.</u> at *27. Due to the individualized inquiries required and the potential for thousands of "trials" within this case, the case should not be certified and notice should not be issued.

C.   INDIVIDUAL ANALYSIS REGARDING PLAINTIFFS' HOURS OF WORK WILL BE REQUIRED MAKING A COLLECTIVE ACTION IMPOSSIBLE

In addition to the individualized factual inquiries needed to resolve the exemptions, similar factual inquiries are needed to determine Plaintiffs' hours of work. Unlike an action where the employees seeking overtime all worked the same or substantially the same number of hours over forty (<u>e.g.</u>, 50 hours), the putative class members in this case have hours that fluctuate from person to person. Indeed, the Plaintiffs' own Declarations in support of their motion for conditional certification bear this out—English estimated he worked 65 hours per week, whereas Tourigny estimated that he worked 75 or 85 hours per

week. Although the E-stat data shows these allegations are gross exaggerations, based on Plaintiffs' own representations, certification is inappropriate.

Defendant treated Plaintiffs as exempt and, as in the <u>Masson</u> case, did not require them to complete timesheets. Thus, their hours can be calculated only through the detailed examination of thousands of pages of data. The E-Stat data records the time a Specialist begins his customer visit and the time it is completed. The parties will need to examine when *each* customer visit began and each customer visit ended for *each* day and *each* week, as was done for Plaintiffs English and Tourigny here. Additionally, because the E-Stat data does not record the time spent driving between customer visits, additional analysis is required, namely, calculating the distance between each customer visit and then attributing some reasonable time to complete the trip, taking into account the time of day the trip occurred (to account for traffic) and the type of road taken to obtain a reasonable estimate of the speed limit).[10] The same analysis may have to be performed to calculate the time spent commuting to and from the first and last customer visit, to the extent Plaintiffs claim such time is compensable (which Defendant denies). This again would require a computation of the distance between the Specialist's home address and the address of the first customer (which changes daily) and the address from the last customer visit (which also changes daily). This analysis must then be supplemented to account for any additional time spent by Specialists working at home, to the extent Plaintiffs contend they performed work activities at the beginning or end of the day. To capture this time, cell phone records, credit card statements, and other documentation will be need to be analyzed.

Putative class members' compensable hours also fluctuate based upon (a) the class members' particular level of expertise, i.e., more experienced Specialists can complete service calls quickly; (b) geography, i.e., greater hours are worked in humid states such as Florida where pest elimination services are needed year round; (c) season, i.e., the need for pest elimination services will spike, in certain regions, during seasons of increased pest infestation; (d) driving time, i.e., in rural regions -

---

[10]    In the analysis performed for Plaintiffs English and Tourigny, we assumed all travel time less than three hours was compensable and did not deduct time for lunch, to give them every favorable inference

- where businesses are geographically spread apart -- the driving time to and from customers can be longer; (e) weather, i.e., extended periods of precipitation or extended periods lacking precipitation can increase the level of infestation and hence the need for pest elimination ; and (f) job titles (and concomitant job duties and responsibilities), i.e., Senior Specialists may receive a disproportionate number of service calls from customers who require their particular level of enhanced expertise and, in rural regions, Specialists may be called upon to make direct sales.[11]  Beehler Aff. ¶¶ 25 - 31.

It is a herculean task to perform the above analysis for only one plaintiff, let alone a class of thousands.

## III.   EVEN IF THE COURT WERE TO GRANT PLAINTIFFS' MOTION, IN WHOLE OR IN PART, PLAINTIFFS' PROPOSED FORM OF NOTICE MUST BE MODIFIED

Even if the Court were to permit Notice to be sent to potential members of the collective action, the proposed Notice submitted by Plaintiffs cannot be used because (1) the proposed Notice is likely to confuse recipients and substantially prejudice Defendant; (2) the text of the proposed Notice is inaccurate and does not convey judicial neutrality; and, (3) the proposed Notice is overly solicitous.

Significantly, the proposed Notice submitted by the Plaintiffs here is almost identical to the proposed Notice submitted by the Plaintiffs in the Masson case, which Judge Mukasey rejected (based on Defendant's objections). See Brecher Aff., Exh. E. Indeed, Plaintiffs have sought here to include almost all of the language Judge Mukasey already held was inappropriate in the Masson case. An alternative proposed form of Notice, which is substantially the same as that approved by Judge Mukasey, is attached hereto.

### A.   TRAINEES AND ROUTE MANAGERS MUST BE EXCLUDED FROM THE NOTICE

The description of the putative class is flawed. Plaintiffs seek to send the proposed Notice to "Route Managers . . . or other positions for whose job duties primarily included providing pest elimination services . . . ." Defendant does not employ "Route Managers" in its Pest Elimination Division.

---

[11]      Some Specialists may be exempt under the outside sales exemption

The only job titles relevant to this action (if any) are "Pest Elimination Service Specialists" and "Senior Pest Elimination Service Specialists," the titles held by Plaintiffs English and Tourigny.  Trainees also must be excluded because they were/are paid overtime.  Beehler Aff. ¶ 7.

B.   THE TEXT OF PLAINTIFFS' PROPOSED NOTICE IS NEEDLESSLY CONFUSING, FAILS TO CONVEY JUDICIAL NEUTRALITY AND IS OVERLY SOLICITOUS OF CLAIMS

1.   THE NOTICE SHOULD NOT CONTAIN A COURT CAPTION

Any Notice issued must avoid the appearance that the action is sanctioned by the Court. See Libront v. Columbus McKinnon, 1984 U.S. Dist. LEXIS 21259, *4 (W.D.N.Y. Dec. 13, 1984). Accordingly, to ensure neutrality, any Notice should not be preceded by the name of this court or the caption of this case. Id. at *4 (striking notice headed by court caption to avoid giving "potential plaintiffs the erroneous impression that the notice is being sent by or at the request of the court.").  Indeed, in the Notice approved in the Masson case, the Court specifically stated that the Notice was to be printed on Plaintiff counsel's letterhead.  See Masson, 2005 U.S. Dist. LEXIS 18022, at *47.   Additionally, a statement in the Notice should be included that provides:

> Although the Court has authorized Plaintiffs' counsel to send this notice, the Court expresses no opinion regarding the merits of the claims in this case, if any.  Plaintiffs' claims and the claims of any person who joins the lawsuit may be subject to later dismissal if the Court finds that the claims lack merit or that this lawsuit cannot be litigated on a collective basis.

2.   THE NOTICE SHOULD NOT CONTAIN ANY REFERENCES TO PLAINTIFFS' COUNSEL'S WEBSITE

The Notice should not contain a reference to the website maintained by Plaintiffs' counsel. By attempting to direct recipients of the proposed Notice to this website, Plaintiffs seek to circumvent the role of the Court in supervising communications with individuals who have not yet decided whether to participate in this action.  If the Court approves Notice directing recipients to this website, they may conclude that the Court has approved of the statements contained on the website.  This could result in substantial misconceptions about this action.  It should be noted that a recent review of the material contained on this website revealed a statement to the effect that employers "cheat workers out of their

overtime." Exposing recipients of the Notice to prejudicial statements of this sort serves no legitimate purpose. Indeed, Plaintiffs' counsel has already posted the proposed Notice submitted for Court approval on his website, even though the Court has not approved it or the Notice. The purpose of this website is obviously to generate claims for overtime pay and lawsuits against employers. There is no conceivable basis for directing recipients of this Notice to this website. All the information needed to make a determination as to whether to join the lawsuit should be contained in the Notice. Plaintiffs in the Masson case tried the same tactic, submitting a proposed form of Notice containing a reference to their website, and the Court, ruling on Defendant's objection, removed any reference to the website from the approved Notice.

> 3. THE NOTICE SHOULD PROVIDE FULL DISCLOSURE REGARDING THE NATURE OF THE DEFENSES AND THE OBLIGATIONS OF CLASS MEMBERS IF THEY JOIN IN

Another defect in the proposed Notice is the dismissive reference to the defenses asserted in this action on page two at the end of section two. In fairness, a statement should be included in the introductory paragraph, after the description of Plaintiffs' claims, that provides:

> Defendant denies the allegations in this case and contends that Plaintiffs, and the others who they contend are "similarly situated," are exempt from the overtime provisions of the FLSA pursuant to several statutory exemptions.

It should also be made clear to the recipient that by signing the consent form, the recipient designates Mr. English as an agent to make decisions on the recipient's behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with counsel concerning attorney's fees and costs and all other matters pertaining to the lawsuit. The class members must be advised that decisions and agreements made and entered into by Mr. English will be binding on the recipient if he or she joins the lawsuit. It should further note that Mr. English has entered into a fee agreement with his counsel and that they may inspect the fee agreement if they so choose.

In addition, it is important to alert recipients to their own potential involvement in the action, including a statement that, if they join the lawsuit, they may be required to provide documents,

answers to interrogatories, sit for a deposition, or testify in Court in New York City. The inclusion of this provision is critical as many Plaintiffs who join the action, but later realize they must answer interrogatories or sit for a deposition, may decide they do not want to participate in the lawsuit and withdraw consent forms, as happened in the <u>Masson</u> case. The parties and the Court should not be burdened with filing and withdrawing consent forms, which could have been avoided had class members received full disclosure regarding their obligations. Similarly, many Plaintiffs, despite being ordered to respond to interrogatories in the <u>Masson</u> case, have refused. Indeed, almost 1/3 of the class has not responded to interrogatories. This has necessitated the filing of a Motion to Dismiss the claims of these Plaintiffs.[12] Had putative members of the class been informed that they may be obligated to respond to interrogatories and document requests, putative class members would have been fully informed of their potential obligations which could have avoided the time and expense in moving to dismiss those claims.

Putative class members should further be advised to preserve any and all documents (both printed and electronic) that may relate to their employment, including any compensation paid to them, any hours that they worked, or any other information that relates to how they spent their time during the applicable period, such as e-mail correspondence, calendars, diaries, logs, date books, credit card statements, telephone records or similar materials.

The consent to sue form also inappropriately refers to a specific fee arrangement that has not yet been approved by the Court. Without commenting on the propriety of the fee arrangement, Defendant submits that the form need not contain such a reference. If such a reference is to be made, Plaintiffs' counsel should present the proposed fee agreement to the Court, with notice to Defendant, for approval.

C.    THE NOTICE IS MISLEADING

Paragraph 2 of the Notice misleadingly advises potential recipients that if they "... wish to be a plaintiff in the lawsuit and be represented by plaintiff's counsel [they] <u>must</u> sign the Consent to Sue

---

[12]    Defendant's motion to dismiss was served on December 29, 2006; Plaintiffs' response is due January 31, 2007 and Defendant's reply is due on February 16, 2007. Brecher Aff ¶ 6

23

Form attached and return it to the lawyers who are representing the plaintiffs." Plaintiffs' insertion of the phrase "must," which Plaintiffs egregiously underscore, unjustly infers that membership in the class is somehow obligatory and not voluntary.[13] Instead, Defendant has proposed reasonably tailored language which advises the putative class of their potential eligibility to join this lawsuit

## IV. THE COURT SHOULD STAY RULING ON THE MOTION FOR NOTICE UNTIL THE SUMMARY JUDGMENT MOTION IS DECIDED

On December 18, 2006, Defendant requested a pre-motion conference prior to filing a motion for summary judgment regarding the applicability of the 7(i) exemption. At a Court conference held on January 5, 2007, the Court ordered expedited discovery regarding the application of the exemption. On January 19, 2007, Plaintiffs served their request for production of documents and a Rule 30(b)(6) Notice. We anticipate discovery will be completed by April 16, 2007 and Defendant's brief served shortly thereafter. While the Court previously declined to stay the briefing of the Motion for Notice, we ask that the Court reserve ruling on the Motion for Notice until the Motion for Summary Judgment is decided, since a favorable ruling will make the present motion moot. Indeed, if the Motion for Summary Judgment is granted, there would be no case in which to join, rendering opt-in forms ineffective, and creating confusion for the putative class members.

## CONCLUSION

Because Plaintiffs have not proven they are similarly situated to those individuals who would receive notice, and because individualized fact-specific inquiries for each putative class member's claims are required, Plaintiffs' motion for leave to issue notice and to proceed as a collective action should be denied.

---

[13] This language was also included in the proposed Notice submitted by Plaintiffs counsel to the Court in the Masson case. The language was struck by the Court based on Defendant's objections

Dated: Melville, New York
       January 29, 2007

                         Respectfully submitted,

                         JACKSON LEWIS LLP
                         58 South Service Road, Suite 410
                         Melville, New York  11747
                         (631) 247-0404
                                - and -
                         59 Maiden Lane
                         New York, New York 10038
                         (212) 545-4000

                         By: _____
                              James R. Williams (JW 3006)
                              Jeffrey W. Brecher (JB 1116)
                              Marc S. Wenger (MW 8910)
                              Matthew A. Steinberg (MS 3979)

                         ATTORNEYS FOR DEFENDANT
                         ECOLAB INC.

## NOTICE OF LAWSUIT

### 1.

## INTRODUCTION TO THE CASE

This notice is to inform you of a lawsuit pending against Ecolab, Inc. in the United States District Court. This lawsuit claims that Ecolab violated the Fair Labor Standards Act by failing to pay all eligible employees overtime at one-and-a-half times their regular pay rate for those hours worked in excess of 40 hours per week. The lawsuit contends that Ecolab must award back pay and double liquidated damages as well as costs and attorneys' fees to such employees. Ecolab denies the allegations in this case and contends that Plaintiffs, and the others who they contend are "similarly situated," are exempt from the overtime provisions of the Fair Labor Standards Act pursuant to several statutory exemptions. Although the Court has authorized Plaintiffs' counsel to send this notice, the Court expresses no opinion regarding the merits of the claims in this case, if any. Plaintiffs' claims and the claims of any person who joins the lawsuit may be subject to later dismissal if the Court finds that the claims lack merit or that this lawsuit cannot be litigated on a collective basis.

If you worked for Ecolab in the last three years as a Trainee, Specialist, Senior Specialist or other position whose primary job duties involved applying pesticides, and were not paid time and one-half for any work performed in excess of 40 hour per week, you may be eligible to join the lawsuit.

### 2.

## TO JOIN THE CASE AND BE REPRESENTED BY PLAINTIFFS' COUNSEL

If you fit the definition above, you may join this case (that is, you may "opt in") by completing and mailing the attached "Consent to Sue" form to the Plaintiffs' lawyer no more than 60 days after the date of this notice at the following address:

Law Office of Dan Getman
9 Paradies Lane
New Paltz, New York 12561

If you fail to return the "Consent to Sue" form to the Plaintiffs' lawyer in time for it to be filed with the federal court on or before the above deadline, you may not be able to participate in this lawsuit.

If you choose to join in this case, you will be bound by the judgment, whether it is favorable or unfavorable. In addition, if you choose to join this case, you may be required to provide documents and answers to written interrogatories (questions) or to sit for a deposition in New York County. Furthermore, you should preserve any and all documents that may relate to your employment with Ecolab, including any compensation paid to you, any hours that you worked, or any other information that relates to how you spent your time during the applicable period, such as calendars, diaries, logs, date books, credit card statements, telephone records or similar materials.

The attorney for the class plaintiffs is being paid on a contingency fee basis, which means that if there is no recovery, there will be no attorneys' fees. If there is a recovery, the attorney for the class will receive either a fee from Ecolab as part of any settlement obtained or money judgment entered in favor of all members of the class, as specified in the attached "Consent to Sue" form. If you sign and return the "Consent to Sue" form attached to this Notice, you are agreeing to designate the class representative to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. These decisions and agreements made and entered into by the class representatives will be binding on you if you join this lawsuit. However, the Court has retained

2

jurisdiction to determine the reasonableness of any fee agreement entered into by Plaintiffs' counsel, and to determine the adequacy of Plaintiffs' counsel.

3.

### TO JOIN THE SUIT, BUT NOT BE REPRESENTED BY THE PLAINTIFFS

You can join this lawsuit by representing yourself of by counsel of your own choosing. To do so, you or your attorney must file appropriate documents with the Court. The address of the Court is:  United States District Court, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007.

4.

### TO STAY OUT OF THE LAWSUIT

If you do not wish to be part of the lawsuit, you need not do anything. If you do not join the lawsuit, you will not be part of the case in any way and will not be bound by or affected by the result, whether favorable or unfavorable. Your decision to join this lawsuit will not affect your right to bring a similar case on your own or in the future. However, claims under the Fair Labor Standards Act must be brought within two years, unless the employer's violation of the law was "willful," in which case the claims must be brought within three years of the alleged violation.

5.

### NO RETALIATION PERMITTED

Ecolab is prohibited by law from taking any retaliatory action against any person, including a current employee, who joins this lawsuit.

3

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2007 a true and correct copy of Defendants' Memorandum Of Law In Opposition To Plaintiffs' Motion To Conditionally Certify A Fair Labor Standards Act Collective Action And Authorize Notice To Be Issued To The Class was furnished via Federal Express overnight mail to counsel for Plaintiffs Michael J.D. Sweeney, Esq., Getman Law Office, 9 Paradies Lane, New Paltz, New York 12561.

Jeffrey W. Brecher, Esq.